# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **THOMAS W. ESTES,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. CIV 14-141-RAW-SPS ) |
| **JOSEPH POFFEL and** **WESLEY BILES,** | ) ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

This action is before the court on the remaining defendants' motions for summary judgment. The Court has before it for consideration Plaintiff's complaint (Dkt. 1), the defendants' motions and exhibits (Dkts. 27, 30), including a dashcam video (Dkt. 27-5), and Plaintiff's response to the motions (Dkt. 31).

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections who is incarcerated at Dick Conner Correctional Center in Hominy, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking monetary damages for alleged constitutional violations during a traffic stop in Muskogee County, Oklahoma. On April 22, 2014, the Court dismissed Defendants Judge Norman Thygesen and the Muskogee County Police Department (Dkt. 5). The remaining defendants are Muskogee County Police Officers Joseph Poffel and Wesley Biles.

**Plaintiff's Claims**

Plaintiff has raised two claims against Defendants Poffel and Biles: violation of the Due Process Clause and violation of the Secure in Their Persons Clause. He alleges in Count 1 of the complaint that Defendant Officer Poffel was in a dominant position and was not under imminent danger or risk to life or limb, when Poffel discharged his weapon into Plaintiff's body with the intent to deprive Plaintiff of his life without due process. Poffel then stood and kicked Plaintiff's body. Plaintiff asserts he "died" for three to seven minutes

and had to be revived. (Dkt. 1 at 5).

Plaintiff claims in Count 2 that Defendant Officer Biles wrongfully sought to deprive him of his right to liberty without probable cause. Plaintiff claims he calmly inquired several times about why the officers had made the stop, but he was told, "I'll tell you later." Biles allegedly attempted to arrest Plaintiff without even knowing Plaintiff's name and used excessive force in placing Plaintiff in a chokehold, when Plaintiff was not belligerent and did not try to flee. (Dkt. 1 at 5-6).

**Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Because Plaintiff is a pro se litigant, the Court construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). This relaxed standard, however, does not relieve his burden of alleging sufficient facts on which a recognized legal claim could be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**Facts**

Plaintiff alleges he was a passenger in a car on January 2, 2013, when Officer Poffel

initiated a traffic stop. (Dkt. 31 at 2). He asserts he "had a legitimate expectancy [sic] of privacy for the duration of the trip, so was understandably agitated for [sic] the intrusion by Biles." (Dkt. 31 at 10).

Poffel arrested the driver of the car, but Plaintiff never heard the reasons for the arrest. When Officer Biles arrived as support, Biles approached the passenger side of the vehicle, opened the door, and ordered Plaintiff out of the car. Plaintiff claims he complied, but asked the reason for the stop. Biles directed Plaintiff to put his hands on the top of the vehicle, and he complied. Plaintiff again asked for the reason for the stop, but Biles did not answer. Biles then allegedly "moved to force [Plaintiff] into custody, and Plaintiff again asked for the reason. Biles did not answer, but attempted an arm lock on Plaintiff. When Plaintiff asked again for the reason for the arrest, Biles allegedly attempted to choke Plaintiff. Plaintiff claims he "turn's [sic] into Biles" after Biles' unlawful attempt to arrest him, "in an effort to escape being attacked." Plaintiff and Biles then fell to the ground. (Dkt. 1 at 5, Dkt. 31 at 2-3).

Plaintiff further alleges that Officer Poffel came immediately and sat on top of him. Poffel allegedly "interacted" with Plaintiff's "person" until Poffel drew his firearm and discharged it into Plaintiff's body. Plaintiff claims he was going into shock when Officer Biles drew his firearm, placed it to Plaintiff's head, and told Plaintiff not to move, or he would put a bullet in him. At this point, Poffel kicked Plaintiff in the area where he had just been shot. (Dkt. 1 at 5, Dkt. 31 at 3).

Plaintiff claims that when he awoke after two surgeries, OSBI Agent Daniel Flores attempted to question him in the hospital. Plaintiff refused and requested a lawyer. The Muskogee Police Chief ordered that Plaintiff have no outside communication, and Muskogee Police officers were stationed inside the hospital room. After six days of being under the influence of hydrocodone and hydromorphone, and being told what a bad person he was, Plaintiff confessed to Flores.

The defendants allege that on January 2, 2013, Officer Poffel investigated a report of

3

a stolen vehicle. (Dkts. 27-1, 27-2 at 4, 30-1, 30-2 at 2). At approximately 12:23 p.m. on that date, Poffel responded to a report of a vehicle driving recklessly (Dkts. 27-2 at 5, 30-2 at 3). he initiated a traffic stop of the vehicle (Dkt. 27-2 at 6, Dkt. 30 at 9). Officer Biles observed Poffel attempting to catch a vehicle and heard Poffel radio in a traffic stop, so Biles radioed that he would assist Poffel with the stop. (Dkts. 27-4 at 1, 30-4 at 1). Once the vehicle stopped, Poffel approached it and, after speaking with the driver, determined the vehicle was the one reported as stolen earlier that morning. (Dkts. 27-2 at 7; 30-2 at 4). Poffel had the driver exit the car, and Poffel placed him in handcuffs. (Dkt. 27-3 at 1, 30-3 at 1). Poffel then returned to the vehicle to get the female passenger out of the back seat. (Dkts. 27-3 at 1, 30-3 at 1).

As Biles arrived on the scene, he saw Poffel handcuffing the driver of the vehicle. (Dkts. 27-4, 30-4). Biles exited his patrol car, and as he approached the vehicle, he heard dispatch confirm the vehicle had been reported stolen. (Dkts. 27-2 at 8, 27-4, 30-2 at 5, 30-4). Poffel escorted the driver to the front of his patrol car. (Dkts. 27-4, 30-4). Biles walked to the front passenger seat where Plaintiff was sitting, opened the door, and ordered Plaintiff out of the vehicle. (Dkts. 27-4, 30-4). According to Plaintiff's interview with OSBI Special Agent Flores after the incident, Plaintiff had a warrant for failure to pay fines and did not want to return to jail. (Dkts. 27-7, 30-5). Therefore, Plaintiff intended to use this opportunity to commit "suicide by cop" by taking enough action to cause the officers to kill him. (Dkts. 27-7, 30-5).

Plaintiff exited the vehicle and placed his hands on the roof of the vehicle. (Dkts. 27-4, 30-4). Biles took Plaintiff's right arm and attempted to place it behind Plaintiff's back, but Plaintiff resisted. (Dkts. 27-4, 30-4). Plaintiff turned toward Biles, grabbed Biles around the waist, and placed his hands on Biles' firearm. (Dkts. 27-4, 27-7 at 1, 30-4, 30-5 at 1). Biles grabbed Plaintiff's head in a position similar to a headlock, and both men fell to the ground in a struggle. (Dkts. 27-4, 30-4). Biles ran to the passenger side of the vehicle where Plaintiff and Biles were on the ground. (Dkts. 27-3 at 2, 30-3 at 2).

4

Poffel got on the ground where Biles had Plaintiff in a headlock with his left arm and was striking Plaintiff with his right hand. (Dkts. 27-3 at 2, 30-3 at 2). Poffel then noticed that Biles' pistol was being pulled out of its holster, but both of Biles's hand were up by Plaintiff's face. (Dkts. 27-3 at 2, 30-3 at 2). As Plaintiff pulled the pistol out of Biles' holster, Plaintiff fired a round. (Dkts. 27-3 at 2, 30-3 at 2). Biles thought Plaintiff was firing his own weapon, but when Biles reached for his weapon, he saw it was in Plaintiff's hand. (Dkts. 27-4 at 1, 30-4 at 1). Biles knew that Plaintiff had fired Biles' weapon, because he could see an empty shell casing holding the slide open. (Dkts. 27-4 at 1, 30-4 at 1). Biles jerked Plaintiff's hand off the weapon, cleared the jam, and stuck it to Plaintiff's temple. (Dkts. 27-4 at 1, 30-4 at 1). Biles told Plaintiff to stop fighting or Biles would put a bullet in him. (Dkts. 27-4 at 1, 30-4 at 1).

Poffel had seen Plaintiff remove Biles' firearm halfway out of the holster and fire a single round into the ground. (Dkts. 27-2 at 9, 30-2 at 6). At this point, Officer Poffel feared for both his and Officer Biles' lives, and Poffel believed Plaintiff posed an imminent threat of serious bodily harm or death to both of them. (Dkts. 27-2 at 10, 27-3 at 2, 30-2 at 7, 30-3 at 2). Poffel told Biles to hold on as Poffel drew his pistol and placed it on the biggest part of Plaintiff's body that he could see. (Dkts. 27-3 at 2, 30-3 at 2). Poffel fired his pistol, hitting Plaintiff with the bullet. (Dkts. 27-2 at 10, 27-3 at 2, 30-2 at 7, 30-3 at 2). Because the threat posed by Plaintiff was so imminent, Poffel had no time to issue a warning. (Dkts. 27-3 at 2, 30-3 at 2). After shooting Plaintiff in the abdomen, Poffel radioed dispatch, advising that shots were fired and to send EMS to the scene. (Dkt. 27-2 at 11).

Plaintiff continued to resist and struggle against the officers and was reaching for something in his pocket, even after he was shot. (Dkts. 27-2 at 22, 25; 27-4; 30-2 at 10; 30-4). Poffel kicked Plaintiff in the torso to force compliance. (Dkt. 27-2). Biles and Poffel required the assistance of a responder from the fire department to handcuff Plaintiff. (Dkts. 27-4, 30-4).

5

**False Arrest**

The defendants allege Plaintiff's claim for false arrest must fail as a matter of law, because there was no constitutional violation when Plaintiff was ordered out of the car. In addition, Plaintiff admitted in his interview with OSBI Special Agent Flores that Biles and Poffel did nothing wrong during the incident, and the officers' response to the incident was because of the environment Plaintiff created. (Tr. Tran. Dkt. 27-6 at 8-9).

Plaintiff was a passenger in a stolen vehicle when Officer Poffel performed a felony stop. When Officer Biles arrived at the scene, he exited his patrol car and heard dispatch confirm the vehicle was reported as stolen. Biles then ordered Plaintiff to exit the vehicle. The Supreme Court has held that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). Further, Plaintiff's detainment did not rise to the level of seizure requiring probable cause. Performing a felony stop and detaining a passenger in a stolen vehicle is considered a *Terry*[1] stop and does not give rise to a claim of false arrest. *See United States v. Salas-Garcia*, 698 F.3d 1242, 1249 (10th Cir. 2012). Therefore, the Court finds the defendants are entitled to summary judgment on Plaintiff's false arrest claim.

**Excessive Force**

Plaintiff alleges he was subjected to excessive force when Officers Biles and Poffel positioned themselves in a dominant position on top of Plaintiff, and then Officer Biles discharged his weapon with deliberate indifference into Plaintiff's body, with the intent to deprive Plaintiff of his life. (Dkt. 1 at 5). Poffel then allegedly stood and kicked Plaintiff's body. *Id.*

"In addressing an excessive force claim brought under §1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application

---

[1] *Terry v. Ohio*, 392 U.S. 1, 1968).

6

of force." *Graham v. Connor,* 490 U.S. 386, 394 (1989). Claims of excessive force committed by law enforcement during an investigatory stop or other "seizure" of a free citizen are evaluated under the Fourth Amendment to the United States Constitution and its "objective reasonableness" standard. *Id.* at 395, 399. This standard requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The reasonableness determination also must account for the "split-second judgments" in "tense, uncertain, and rapidly evolving" circumstances that police officers often must make. *Id.* at 397. [T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* "In determining whether the use of force is reasonable in a particular situation, we consider (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to flee." *Morris v. Noe,* 672 F.3d 1185, 1195 (10th Cir. 2012) (citing *Graham*, 490 U.S. at 396).

***Defendant Officer Biles***

In addressing an excessive force claim under § 1983. the Court first must "isolate the precise constitutional violation with which [the defendant] us charged." *Baker v. McCollan*, 443 U.S. 137, 140 (1979). The Fourteenth Amendment applies to excessive force claims after arrest but before conviction, such as claims of excessive force by pretrial detainees. *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010). Such claims under the Fourteenth Amendment requires a use of force after arrest, but Plaintiff has not made a claim of force

7

by Biles or that such use of force occurred after Plaintiff was under arrest. Therefore, there are no genuine issues of fact on this issue, and summary judgment should be granted.

As for Plaintiff's Fourth Amendment claim against Biles, when an excessive force claim arises in the context of an arrest or investigatory stop, "it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures.'" *Graham*, 490 U.S. at 394. Under this standard, the issue is whether Officer Biles' actions were "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *Id.*

Plaintiff admitted in his OSBI interview following the incident that his intention during the traffic stop was "suicide by cop," and Biles did nothing wrong. (Dkt. 27, UMF Nos. 12, 24-37; Dkt. 27-7 at 1, Plaintiff's OSBI Narrative). He also admitted to intentionally resisting Biles' attempts to secure his arm behind his back, grabbing Officer Biles, falling to the ground and wrestling with Biles, pulling Biles' gun from its holster, and intentionally firing the weapon once before the gun cleared the holster. (Dkt. 27-7 at 1).

Plaintiff now contends in his response to the motions for summary judgment that the confession was made after his surgeries, strong medications, and isolation. (Dkt. 31 at 3). He claims he did not actually have any memory of the incident, and gave details to the OSBI agent that did not match the events on the dashcam video. (Dkt. 31 at 3-4).

Plaintiff also attempts to challenge whether he grabbed and fired Officer Biles' weapon, claiming "[c]ertain facts are . . . left out of the narrative:"

> 1) Officer firearms are fully loaded, with a round chambered, the hammer ready to decend [sic] and fire the weapon, with saftey's [sic] off.
>
> 2) Any type of jarring or joseling [sic] of a weapon in that possition [sic] could easily cause it to fire, and
>
> 3) There are different security levels of holsters.

(Dkt. 31 at 14). Plaintiff further asserts:

> Biles did attempt to unlawfully arrest Plaintiff. Poffel did shot [sic] Plaintiff,

8

using as justification that Plaintiff allegedly removed Biles' firearm and discharged it. There is no gunpowder residue documented on [Plaintiff's] hand, [his] fingerprints where [sic] not found on Biles' firearm. Dash cam video does not show [Plaintiff] in any type of possession of Biles' firearm.

(Dkt. 31 at 17). Plaintiff, however, never actually denies having grabbed and fired Officer Biles' weapon. The Court acknowledges that the video does not show Plaintiff grabbing and firing Biles' gun, because Plaintiff was wrestling with Biles at the time. Other evidence, however, does substantiate these allegations against Plaintiff.

An analysis of Biles' conduct as required by *Graham* results in a finding of objective reasonableness. Factors 1 and 2--the severity of the crime at issue, and whether the suspect posed an immediate threat to the safety of the officers or others--are closely related and weigh in Biles' favor. Plaintiff was a passenger in a stolen car, and officer training requires officers to perform a felony stop under such circumstances. (Dkt. 27-6 at 3, Trial Tr. at 47). A felony stop is a higher level of alert for officers, and a significant reason for performing a felony stop is to ensure the safety of the officers and others when responding to serious and dangerous situations. *Id.* For everyone's safety, all occupants of the vehicle must exit the vehicle and be secured. *Id.*

The third factor examines whether the individual is actively resisting arrest. The record shows that Plaintiff resisted Officer Biles from the beginning of the stop, requiring Biles to place Plaintiff in a headlock as they wrestled on the ground. Plaintiff then escalated the situation when he took Biles' gun and fired it. In addition, the dashcam video clearly shows Plaintiff in a physical altercation with Biles and Poffel. Therefore, Officer Biles actions were reasonable, based on the level and severity of Plaintiff's resistance. Regardless of whether Plaintiff fabricated his OSBI statement, the evidence clearly demonstrates that Officer Biles did not use unreasonable force, and summary judgment is warranted on this claim.

***Defendant Officer Poffel***

Plaintiff alleges that Defendant Poffel violated the Due Process Clause with respect

to Poffel's alleged wrongful use of force. (Dkt. 1 at 5). The Supreme Court, however, has held that the Fourth Amendment addresses the matter of "pretrial deprivations of liberty." *Albright v. Oliver*, 510 U.S. 266, (1994). Therefore, Plaintiff's claims should be examined under the Fourth Amendment.

Plaintiff claims Officer Poffel used excessive force when Poffel shot, then kicked Plaintiff, after Plaintiff grabbed Officer Biles' weapon and fired it. As discussed above, the claim is examined under the objective standard of *Graham*. "[D]eadly force [is] justified under the Fourth Amendment if a reasonable officer in Defendants' position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others." *Jiron v. City of Lakewood*, 392 F.3d 410, 416 (10th Cir. 2004) (citation omitted). As stated earlier, this inquiry must judged from the perspective of a reasonable officer on the scene, not with the benefit of hindsight. *Graham*, 490 U.S. at 396.

Under the Fourth Amendment, assessment of the degree of threat the suspect poses to police officers gives consideration to factors that include, but are not limited to "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Thomson v. Salt Lake City*, 584 F.3d 1304, 1314-15 (10th Cir. 2009) (quoting *Estate of Larsen ex. rel. Stirdovan v. Muir*, 511 F.3d 1255, 1260 (10th Cir. 2008).

Here, the Court finds Plaintiff's actions posed an immediate threat to Defendant Poffel and others. Plaintiff was engaged in a struggle with Officer Biles when Plaintiff grabbed Biles' weapon. After Plaintiff filed a shot, he actively resisted any attempt to subdue him. Defendant Poffel reasonably believed his life and Officer Biles' life were in immediate danger, requiring the use of force against Plaintiff. Furthermore, Plaintiff continued to struggle after he was shot, necessitating Poffel's kicking him in a further attempt to subdue him. (Dkt. 30 at 11, UMF No. 17). After consideration of these factors, the Court finds the

evidence "is so one-sided" that Officer Poffel "must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-52. Therefore, summary judgment is granted on this claim.

**ACCORDINGLY,** Defendant Wesley Biles' motion for summary judgment (Dkt. 27) and Defendant Joseph Poffel's motion for summary judgment (Dkt. 30) are GRANTED. All remaining motions are DENIED as moot. This action is, in all respects, DISMISSED.

**IT IS SO ORDERED** this 30th day of September 2016.

**Dated this 30th day of September, 2016.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma